## ROYAL INDEMNITY CO. v. NEELY.
### No. 11939.

Court of Civil Appeals of Texas. Dallas.
Feb. 9, 1935.

Rehearing Denied March 16, 1935.

Thompson, Knight, Baker & Harris and Adair Rembert, all of Dallas, for appellant.

White & Yarborough, of Dallas, and Paul Stanford, of Canton, for appellee.

JONES, Chief Justice.

This is a workmen's compensation suit, in which appellee, A. L. Neely, is the injured employee, appellant, Royal Indemnity Company, is the compensation carrier, and L. H. Lacy Company is the employer. From a judgment in the district court of Van Zandt county canceling the award of the Industrial Accident Board and rendering judgment in favor of appellee for 200 weeks' total disability and 100 additional weeks for 50 per cent. partial disability, appellant has perfected this appeal. The following is a statement of the necessary facts:

Appellee alleges in his petition that he was injured "on or about the 20th day of July, 1933," and alleged specifically the manner and character of his injuries. He alleged that at the time of his injuries he was employed as a day laborer by the Lacy Company, doing concrete work on a Van Zandt county highway, and that appellant carried the Lacy Company's compensation insurance.

Appellant, in its answer, denies that appellee suffered any injury while he was an employee of the Lacy Company, that, if appellee suffered any injury, it was on the night of July 24, 1933, while he was visiting at the house of a neighbor where some young people had gathered, and that, when he took his departure, he undertook to swing out of the door by placing both hands on the door lintel, when his hands slipped and he fell on his abdomen across a log used as the first step for entrance into the house. Appellant claimed also that, even if appellee was injured at the time and place he claimed, the findings of the jury that he suffered 200 weeks' total disability and 100 weeks' partial disability is grossly excessive and against the great preponderance of the evidence. Appellant urges other contentions for a reversal of the case which will be discussed later in this opinion.

It may be stated that, except as to matters that are jurisdictional, every fact necessary to appellee's recovery in this case, except as to the amount of his daily wage, is in sharp

conflict. Appellee's testimony is specific and direct that he received his injuries at the time and place, and in the manner alleged in his petition, and received no injury on the night of July 24th, when he sustained the fall, while leaving the house of the neighbor, where he and his brother had gone to get some tobacco and found an assembly of young people. Appellee denies, and is corroborated by other witnesses, that he fell on his abdomen across the log forming the doorstep, but claims he merely fell a short distance on his hands and knees and received no injury whatsoever on said occasion. There is some corroborating evidence as to the time he received the injuries and the time he left the employment of the Lacy Company, which he testified was shortly after the injuries were received, though he admits returning to the place of work the following morning, but denies that he engaged in any work.

On the other hand, appellant introduced evidence tending to show that no such injury could have been received on July 20, 1933, as claimed by appellee. Appellant also introduced direct evidence, from witnesses present, of appellee's fall at the neighbor's house on the night of July 24th, in the manner claimed by it, and corroborated its claim of injuries to appellee on such occasion by medical testimony that will be given later.

The undisputed evidence shows that some months before the alleged injuries appellee had a severe attack of appendicitis, and his family physician, Dr. Shoemaker, advised him that he would have to have an immediate operation. He followed this advice, and, when he arrived at St. Paul Hospital, in the city of Dallas, for such operation, it was discovered that appellee had a ruptured appendix, and Dr. J. A. Hampton, on the surgical staff of such hospital, immediately performed an operation, but, because of the patient's condition and the existence of so much free pus in the region of the ruptured appendix, it was not removed, but the incision was kept open for some time and a drainage tube inserted therein. This operation was performed March 24, 1933. Appellee made a complete recovery from the operation in the course of a few weeks, and, according to his testimony, became as strong physically as he was before the operation.

On the afternoon of July 21st, the day following the alleged injury, appellee testified he consulted his family physician, Dr. Shoemaker, going to his office in Canton, accompanied by his father, and that after the examination the doctor informed him that the adhesions formed from the first operation were torn loose and that he should have another operation soon. In this testimony appellee is corroborated by the testimony of Dr. Shoemaker, to the effect that his examination disclosed that some adhesions from the first operation were torn loose, and that he advised him to undergo another operation at once, and is corroborated by his father as to the time he visited the doctor.

On July 26th he again went to the St. Paul Hospital and was operated upon by Dr. Hampton. Dr. Hampton testified that there were a number of adhesions from the first operation torn loose, and that appellee was again suffering from an attack of appendicitis, and that he operated upon appellee for torn adhesions and to remove the appendix. Dr. Hampton further testified that, from the appearance of the raw surface of the torn adhesions, he would say that the injuries had occurred not later than 48 or 56 hours before his operation on the 26th. This latter evidence tended strongly to corroborate the theory of appellant that the injuries from the torn adhesions had actually been sustained on the night of July 24th, and not on July 20th.

On the other hand, the testimony of Dr. Shoemaker, who examined appellee July 21st, shows that the torn adhesions were in existence on that date, together with the testimony of Dr. Ford in behalf of appellee, to the effect that a raw surface from torn adhesions would exist within a period of six days from the time of such an injury, tended strongly to corroborate appellee that his injury was received on July 20th.

The issue, therefore, as to whether appellant was injured at the time and place to which he testified, or was injured on the night of July 24th, clearly became a contested issue of fact to be decided by the jury; each contention being supported by substantial evidence.

The cause was submitted to the jury on special issues. Those issues that are necessary to this appeal, and the findings thereon, are:

"Question No. 1: Do you find from a preponderance of the evidence that plaintiff, A. L. Neely, sustained personal injuries on or about the 20th day of July, A. D. 1933? Answer 'yes' or 'no.' We, the jury, answer yes.

"Question No. 2: If you have answered Special Issue No. 1, 'yes,' then you shall answer the following question, but if you have answered Special Issue No. 1, 'no,' you need not answer this question: Do you find from a preponderance of the evidence that such injuries, if any, sustained by the plaintiff, A.

L. Neely, on or about July 20th, 1933, were sustained by him while working as an employee of L. H. Lacy Company? Answer: 'yes' or 'no.' We, the jury, answer yes.

"Question No. 3: If you have answered Question No. 2 'yes,' then you shall answer this question, but if you have answered question No. 2, 'no,' then you need not answer this question: Do you find from a preponderance of the evidence that such injuries, if any, sustained by plaintiff, A. L. Neely, on or about July 20th, 1933, were received by him in the course of his employment with L. H. Lacy Company? Answer 'yes' or 'no.' We, the jury, answer yes.

"Question No. 4: If you have answered preceding question No. 3 'yes,' then you shall answer this question, but if you have answered preceding question No. 3, 'no,' then you need not answer this question: Do you find from a preponderance of the evidence that plaintiff, A. L. Neely, sustained total incapacity on or about July 20th, 1933? Answer 'yes' or 'no.' We, the jury, answer yes.

"Question No. 5: If you have answered preceding question No. 4, 'yes,' then you shall answer this question, but if you have answered question No. 4, 'no,' then you need not answer this question: Do you find from a preponderance of the evidence that such total incapacity, if any, sustained by A. L. Neely, on or about July 20th, 1933, naturally resulted from the injuries, if any, received by him on said date? Answer 'yes' or 'no.' We, the jury, answer yes.

"Question No. 6: If you have answered preceding question No. 5, 'yes,' then you shall answer this question, but if you have answered the preceding question No. 5, 'no,' then you need not answer this question: How long do you find from a preponderance of the evidence that the total incapacity, if any, of the plaintiff, A. L. Neely, continued or will continue from the date said injuries, if any, were sustained? Answer in weeks, if any. We, the jury, answer 200 weeks.

"Question No. 7: Do you find from a preponderance of the evidence that the plaintiff, A. L. Neely, suffered or will suffer any partial incapacity as a natural result of the injuries, if any, sustained by him on or about July 20th, 1933? Answer 'yes' or 'no.' We, the jury, answer yes.

"Question No. 8: If you have answered special issue No. 7 'yes,' then answer the following question, but if you have answered question No. 7, 'no,' then you need not answer this question: How many weeks of partial incapacity, if any, do you find from a preponderance of the evidence plaintiff, A. L. Neely, sustained as a natural result of the injuries, if any, received by him on or about July 20th, 1933? Answer in number of weeks, if any. We, the jury, answer 100 weeks.

"Question No. 9: What percentage of partial incapacity, if any, do you find from a preponderance of the evidence that plaintiff, A. L. Neely, suffered, or will suffer, during the period, if any, you have found he was or will be partially incapacitated? Answer by giving the percentage, if any you find? We, the jury, answer 50 percent.

"Question No. 10: If you have answered question No. 7, 'yes,' then answer this question, but if you have answered question No. 7, 'no,' then you need not answer this question: When do you find from a preponderance of the evidence, said partial disability, if any, did begin, or will begin? Answer, giving date, if any. We, the jury, answer May 20th, 1937."

The findings on each of the above special issues are sustained by substantial evidence, and are adopted as the findings of this court.

■ It will be noted that the court, in submitting the issue in respect to the time that the injuries were received, in every instance used the language of the petition, alleging his injuries to have occurred "on or about the 20th day of July," and appellant objected to this manner of submission, for the reason that the time "on or about the 20th day of July" would reasonably embrace the 24th day of July, when appellee was not in the employ of the Lacy Company, and on which date appellant claims appellee received his injuries, and thereby permitted a recovery, even though the jury might have believed the injuries were received on the 24th, and did not believe they were received on the 20th of July. We think this criticism to the court's charge is unsound, for in every issue except No. 1 the court submitted to the jury as to whether the injuries found, in answer to issue No. 1, were sustained while the appellee was working for the Lacy Company, or were sustained while appellee was in the course of his employment with the Lacy Company. The jury could not have been confused in the respect complained of; hence this objection to the court's charge is overruled.

It is likewise strenuously insisted by appellant that the findings of the jury as to the total incapacity of appellee and the length of time the incapacity existed is against the great preponderance of the evidence. While this was a contested issue, yet the medical testimony of Dr. Shoemaker and of Dr. Ford and the testimony of appellee and his cor-

roborating witnesses are of such a substantial nature as to appellee's physical condition clearly to sustain such a finding, for which reason this court is not authorized to set the finding aside as being against the great preponderance of the evidence. The jury saw the witnesses on the stand, heard their testimony, and noted the manner in which it was given; the court likewise heard the witnesses on the stand, saw their manner of giving testimony, and approved the verdict by overruling the motion for a new trial. We therefore overrule this assignment of error.

The same contention is made in respect to the finding of the jury that there was a partial incapacity suffered by appellee after the total incapacity had ceased, but before he had fully recovered from his injuries. We think this is a finding authorized by the same evidence, and overrule this contention.

Error is assigned on the argument of one of the counsel for appellee, in which counsel read a portion of the claim for compensation, written in appellee's handwriting, and filed with the Industrial Accident Board, and about which appellee was interrogated while a witness, and after reading same counsel said: "While he (appellee) was up there (at the hospital) do you mean to say that, while a man is looking right across the hill to the Great Beyond he is going to frame a lie?" This was objected to by appellant, on the ground that: "There is no evidence so far that he was 'looking right across the hill to the Great Beyond' and counsel is outside the record. We ask the court to instruct the jury not to consider the argument." This objection was overruled and error assigned on the ruling of the court. Appellee had undergone a serious major operation, and was in the hospital when he made out the claim for injuries. We do not believe counsel was out of the record in describing the condition of appellee, when he made his claim for injuries, as being that of a man "looking right across the hill to the Great Beyond." It was an inference from the facts in evidence.

Error is also assigned on hypothetical questions asked Dr. Ford by appellee's counsel as being outside the record. We have examined the bills of exception and the court's modifications on which these assignments are based, with the result that we do not believe any of them present error, and each such assignment is overruled.

Other assignments of error, which we have not deemed it necessary to discuss, have been examined and are overruled.

The case as a whole appears to have been fairly and ably tried, and, while the evidence is such that it would have supported contrary findings of the jury, the findings of the jury are nevertheless supported by substantial evidence, and we are of the opinion that the case should be affirmed.

Affirmed.